UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 608941 NJ INC., <br><br>                    *Plaintiff*, <br><br>   - against - <br><br> JEFFREY SIMPSON, <br><br>                    *Defendant.* | Civil Action No. |

## COMPLAINT

Plaintiff 608941 NJ INC. files its Complaint against Defendant Jeffrey Simpson and in support thereof states and alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff 608941 NJ INC. ("Oak") and another company called JJ Arch LLC ("JJ Arch") are parties to a December 11, 2017 Limited Liability Company Operating Agreement (the "AREH LLC Agreement") that governs the operations of Arch Real Estate Holdings LLC ("AREH"). Together, Oak and JJ Arch are the two members of AREH.

2. Defendant Jeffrey Simpson ("Simpson") was until recently the managing member of JJ Arch, as described further below. JJ Arch, in turn, was and still is the Managing Member of AREH.

3. AREH ultimately controls a number of entities that own, or have mortgage liens on, a portfolio of properties throughout the United States (the "Arch Portfolio").

4. Oak, through various subsidiary entities, has invested over $50 million of equity in the Arch Portfolio, and an affiliate of Oak (the "Oak Guarantor") executed various loan guaranties in connection with loans secured by the Arch Portfolio. Oak Guarantor has millions of dollars of

potential liability under those guaranties.

5.     Oak brings this action against Simpson in his individual capacity as the former managing member of JJ Arch for breach of fiduciary duties he owes directly to Oak, defamation, and tortious interference with prospective economic advantage.

## THE PARTIES

6.     Oak is a corporation duly organized and existing under, and by virtue of, the laws of the State of New Jersey, with its principal place of business in Toronto, Canada.

7.     Simpson is a resident of the State of New York, domiciled at 1055 Park Avenue Unit 4, New York, New York 10028.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because, as alleged above, (i) Oak and Simpson are citizens of different States and (ii) the amount in controversy, exclusive of interest and costs, exceeds $75,000.  Specifically, Oak is a New Jersey corporation with its principal place of business in Toronto, Canada.  Simpson is an individual whose primary residence is within the State of New York.  Further, Simpson's actions as alleged below have damaged Oak in an amount that greatly exceeds $75,000, exclusive of interest and costs.

9.     To the extent the Court determines that Oak is a citizen of a foreign state (i.e., Canada) because its principal place of business is in Toronto, Canada, this Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because the action is between a citizen of a State (Simpson) and a citizen of a foreign state (Oak).

10.    Venue is proper in this Court because Simpson resides within this judicial district. 28 U.S.C. § 1391(b)(1).  Venue is further proper in this Court because a substantial part of the

events or omissions giving rise to Oak's claims occurred within the territory of the United States District Court for the Southern District of New York.  28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

**A.      Background of the Parties' Relationship**

11.     Nonparty JJ Arch is a New York limited liability company that was, upon information and belief, created to serve as Managing Member of AREH and as a direct or indirect investor and manager of various investments.

12.     Simpson was until recently the managing member of JJ Arch and, through JJ Arch, the managing member of AREH.  As described further below, Simpson was recently removed from JJ Arch.

13.     Oak and JJ Arch together are the two members of AREH, a New York limited liability company.  JJ Arch is the Managing Member of AREH.  The Arch Portfolio, which AREH ultimately manages, comprises more than 10 real estate properties, held in various single purpose companies that are affiliates of and/or controlled by AREH.

14.     The AREH LLC Agreement, dated December 11, 2017, sets forth Oak's and JJ Arch's respective rights and obligations in respect of AREH.  A true and correct copy of the AREH LLC Agreement is attached hereto as **Exhibit 1**.

15.     A separate December 11, 2017 Limited Liability Company Operating Agreement (the "JJ Arch LLC Agreement") sets forth the respective rights and obligations of Simpson and JJ Arch's other member, Jared Chassen, with respect to JJ Arch.  A copy of the JJ Arch LLC Agreement, which Simpson previously provided to Oak, is attached hereto as **Exhibit 2**.

16.     Pursuant to Article 1, Section 1.1 of the AREH LLC Agreement, JJ Arch is the Managing Member of AREH.

17.  Pursuant to Section 1.1 of the AREH LLC Agreement, Plaintiff Oak is the Investor Member of AREH.

B.  **Simpson's Misconduct**

18.  As the individual controlling JJ Arch, the Managing Member of AREH, Simpson owed fiduciary duties directly to Oak, its non-Managing Member.

19.  Simpson has repeatedly breached those fiduciary duties. Such breaches include:

   a.  Directing counsel for AREH, certain of its subsidiaries, Oak and Oak Guarantor (as guarantor of certain loan obligations with respect to the Arch Portfolio) to stop work on critical, time sensitive work as a means of leverage to force Oak to take certain actions. *See, e.g.*, **Exhibit 3** (July 11, 2023 11:50 PM email from J. Simpson re: Morrison Cohen, redacted due to privilege concerns but available for *in camera* review). On information and belief, Simpson continues to interfere in the representation of AREH, certain of its subsidiaries, Oak and Oak Guarantor in these time-sensitive matters, advising counsel to halt work following his removal from JJ Arch and AREH.

   b.  Directing counsel for AREH, certain of its subsidiaries, Oak and Oak Guarantor to not speak to Oak or Oak Guarantor, such counsel's own client. Again, Simpson's purpose was to exert leverage over Oak and Oak Guarantor. *See, e.g.*, **Exhibit 4** (August 1, 2023 5:36 PM email from J. Simpson re Nostrand).

   c.  Making misrepresentations to Oak concerning capital. For instance, regarding the 550 Metropolitan Avenue development in which Oak is a General Partner, it came to Oak's attention that although the relevant member loan provisions in the underlying agreements allow Oak to fund shortfalls and accrue an 18% interest rate, AREH at Simpson's direction had made a commitment to other investors that such loans would

accrue at only 12%.  AREH and Simpson made this commitment without Oak's knowledge, authorization, notification, or any amendment to the underlying agreements.  *See* **Exhibit 5** at Section 3.2.2 (Amended and Restated Limited Liability Company Operating Agreement of 550 Metropolitan Ave Holdings LLC); **Exhibit 6** (550 Member Loan Distribution Records, reflecting interest rate of 12%).  Oak challenged this immediately, and Simpson attempted to justify his unauthorized and unwarranted conduct by suggesting that family and friends would be unduly penalized under the contractually agreed 18% rate.  The 550 Metropolitan Avenue development is not the only instance in which Simpson unilaterally, without Oak's knowledge, authorization, notification, or any amendment to the underlying agreements, lowered the interest rate accruing to Oak.

        d.        Advising Oak that certain capital calls to other investors had been made, which was not the case in fact.  As a result of such misrepresentations, (1) Oak funded significant capital on behalf of such other investors, and (2) Simpson led Oak to believe that Oak's capital funding would have priority over other investors' distributions and therefore that it would effectively receive interest from the other investors who failed to contribute. In fact, Oak had no such right to priority payments or interest, as no capital calls had occurred.  *See, e.g.*, **Exhibit 3** (July 11, 2023 11:50 PM email from J. Simpson re: Morrison Cohen, redacted for privilege); **Exhibit 7** (July 31, 2023 8:01 PM email from T. Last re: Myrtle).

        e.        Threatening to fire all AREH employees and cease operations if Oak does not accede to demands for money, despite no capital calls having been made. *See, e.g.*, **Exhibit 10** (July 11, 2023 11:39 PM email from J. Simpson re: Meeting Recap).

  f. Refusing to execute noncontroversial Consents absent unrelated language that would serve only his interests, prejudicing the business.  For instance, Simpson refused to execute a simple Consent required by a lender in connection with the handover of a property by "deed-in-lieu of foreclosure" on the evening before the foreclosure auction unless Oak agreed to sweeping indemnity for himself and a further agreement to broaden his authority beyond that contemplated in the AREH LLC Agreement. A consensual handover by "deed in lieu of foreclosure" – as opposed to completion of the foreclosure – would have resulted in a release by the lender of various liabilities that would not be released upon foreclosure. Simpson's refusal to sign the Consent lacked any legitimate business purpose, and Simpson was aware his refusal would leave Oak Guarantor potentially liable for substantial additional costs due to its status as guarantor. The foreclosure auction was postponed to try to resolve this, but Simpson continues to refuse to sign the Consent.  *See* **Exhibit 12** (July 26, 2023 10:34 PM email from J. Simpson re AREH Brown Consent; **Exhibit 8** (August 10, 2023 12:14 AM email from J. Simpson re: Trawler/Arch/Penn Treaty Mezz Loan).  This is just one of many instances of Simpson engaging in extortive and threatening conduct to the detriment of Oak and AREH for his own personal gain.

  g. Engaging in conduct constituting a "Major Decision" under the AREH LLC Agreement, which requires the consent of Oak, without providing Oak any notice of such conduct nor seeking Oak's required approval.  Simpson likewise attempted to circumvent his obligations to obtain Oak's consent to make a Major Decision, which is defined as, among other things, a decision to "enter into any agreement requiring the expenditure of more than $50,000 per annum" by amending an agreement to facially appear to fall below

the $50,000 threshold, when in fact, the contingent liabilities under said agreement well exceeded that amount.

h.  Making misrepresentations to induce Oak's investment in various properties in the Arch Portfolio; generally creating a hostile business atmosphere because of his ego that is damaging critical relationships with lenders, contractors, tenants, etc.; and making defamatory statements to third parties. *See, e.g.*, **Exhibit 4**.

20. These breaches have damaged Oak and significantly prejudiced it both operationally and in pending litigation with third parties.

C.  **Simpson is Notified of Cause Events and JJ Arch terminates Simpson as a Result**

21. Pursuant to Section 7.1.4 of the AREH LLC Agreement, JJ Arch can be removed as Managing Member for a Cause Event. Specifically, Section 7.1.4 of the AREH LLC Agreement, entitled "Removal of JJ Member as Managing Member," provides:

> JJ Member cannot be removed as "managing member" except by the Investor Member upon a Cause Event. Investor Member may remove JJ Member as "managing member" upon a Cause Event effective ten (10) Business Days after the delivery of written notice thereof to JJ Member, or at such later date as is specified in such notice. Upon JJ Member's receipt of a Notice of Removal, JJ Member shall reasonably cooperate with Investor Member in complying with any requirements imposed by any lender to the Company or a Subsidiary with respect to the replacement of JJ Member as the Managing Member. If JJ Member is removed as "managing member" then (i) JJ Member shall have all voting and consent rights provided to Investor Member in this Agreement as if JJ Member were "Investor Member" and (ii) if such removal is a result of a Cause Event under clauses (i) – (v) of the definition of Cause Event, JJ Member shall have no right to receive any distributions pursuant to Section 6.1(iii) or 6.2.

22. Section 1.1 of the AREH LLC Agreement defines a Cause Event as follows:

> "Cause Event" means with respect to Managing Member (unless otherwise indicated) (i) willful misconduct in relation to the business or affairs of the Company or a Subsidiary, (ii) breach of

fiduciary duty in relation to the business or affairs of the Company or a Subsidiary, (iii) gross negligence in relation to the business or affairs of the Company or a Subsidiary which results in a material loss to the Company or a Subsidiary or its Members as such, (iv) a final non-appealable finding of fraud by a court of competent jurisdiction in any relation to any business of its affairs, (v) misappropriation of Company or Subsidiary funds or property, (vi) conviction, or a plea of nolo contendre, of Jeffrey Simpson any felony, (vii) any wrongful act or omission which results in an acceleration of any loan encumbering the Property, or (viii) any breach of a material provision of this Agreement which is not cured within 30 days of notice of such breach.

23. Accordingly, on August 6, 2023, Oak gave written notice to JJ Arch and Simpson of a Cause Event (the "AREH Cause Event Notice"), attached hereto as **Exhibit 9**, but did not seek the immediate removal of JJ Arch as Managing Member of AREH because, among other reasons, such removal would require the prior consent of various third parties. The AREH Cause Event Notice states, among other things:

> JJ Member, through the actions of Jeffrey Simpson (the managing member of JJ Member), has committed multiple Cause Events, including, without limitation, willful misconduct and breach of fiduciary duty in relation to the business and affairs of the Company and various Subsidiaries, such as, without limitation, (a) directing lawyers for one or more Subsidiaries to stop work on extremely time sensitive matters for Jeffrey Simpson's own personal leverage, (b) continually threatening to sabotage the business of the Company and various Subsidiaries if Investor Member does not accede to various demands, and (c) making various misrepresentations to Investor Member to induce Investor Member to invest in deals and contribute additional capital to Subsidiaries.

24. The JJ Arch LLC Agreement provides that a Member is required to resign immediately if "a Cause Event has occurred with respect to a Member and the other Member has delivered written notice thereof to such Member requiring such Member to resign." *See* JJ Arch LLC Agreement at Section 1.1 (definition of "Resignation") and Section 7.5.

25. A "Cause Event" with respect to a Member under the JJ Arch LLC Agreement is

defined as a Cause Event under the AREH LLC Agreement with respect to that Member and therefore is identically defined.  *See* JJ Arch LLC Agreement at Section 1.1 (definition of "Cause Event").

26. Mr. Chassen gave written notice also on August 6, 2023 to Simpson of a Cause Event under the JJ Arch LLC Agreement (the "JJ Arch Cause Event Notice" and together with the AREH Cause Event Notices, the "Cause Event Notices") and demanded his immediate resignation as managing member of JJ Arch.

27. Simpson's resignation, per the terms of the JJ Arch LLC Agreement, was immediate upon receipt of the JJ Arch Cause Notice, as the underlying JJ Arch LLC Agreement provides that Resignation occurs if "a Cause Event has occurred with respect to a Member and the other Member has delivered written notice thereof to such Member requiring such Member to resign."

28. By virtue of his removal from JJ Arch, AREH's Managing Member, Simpson no longer has any authority to act on behalf of AREH.

**D.     Simpson Continues to Purport to Act on Behalf of AREH without any Authority**

29. Nevertheless, following the Cause Event Notices, Simpson refuses to acknowledge his forced resignation from JJ Arch, writing, "I will run the business that I am authorized to run, and you will all stand down" and further threatening criminal complaint.  *See* **Exhibit 11** (August 6, 2023 4:30pm email from J. Simpson).

30. Following the Cause Event Notices, Simpson has refused to resign as managing member of JJ Arch and continues to intentionally breach his duties and harm Oak by, among other things:

    a.     failing to execute a Consent required by a lender;

      b.      again directing counsel to stop work on critical work without concessions from Oak; and

      c.      falsely advising the bank that holds all the bank accounts for AREH and the Arch Portfolio that he remains in charge, resulting in freezing of accounts that will effectively halt the AREH business, prevent the ability to pay various employees and vendors, and prevent the ability to pay any other expenses with respect to the Arch Portfolio, causing considerable harm to plaintiff Oak's interests in the Arch Portfolio.

## CAUSES OF ACTION

### COUNT I – BREACH OF FIDUCIARY DUTIES

31.    Oak repeats and realleges the allegations contained in paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32.    Simpson was the managing member of JJ Arch, which in turn, is the Managing Member of AREH.

33.    Oak and JJ Arch are co-members of AREH.

34.    As a result of this relationship and Simpson's former status as the controlling person of the Managing Member of AREH, Simpson owed fiduciary duties to Oak.

35.    Simpson knowingly breached his fiduciary duties to Oak.

36.    A non-exhaustive recitation of Simpson's misconduct includes:

      a.      unilaterally and without authorization reducing the contractually obligated interest rate accruing to Oak for loans made to other co-investors; and

      b.      interfering in the legal representation of Oak in pending litigations by directing counsel for AREH, certain of its subsidiaries, and Oak, to stop work on critical, time sensitive work or else not communicate with Oak, among other serious acts of

misconduct.

37. Simpson's misconduct caused Oak to suffer damages in excess of $75,000, exclusive of interest and costs, including the loss of accrued interest to which it was contractually entitled, increasing Oak's legal bills in the pending litigation and creating substantial risks to the value of Oak's investments in the Arch Portfolio, among other damages.

## COUNT II – DEFAMATION

38. Oak repeats and realleges the allegations contained in paragraphs 1 through 30 of this Complaint as if fully set forth herein.

39. Simpson has made knowingly false statements of fact about Oak's business.

40. Simpson has made numerous statements that are defamatory per se, including statements that employees of Oak have and that prejudice Oak in its profession.

41. For instance, in an email communication in which numerous business associates of Oak were included, including Oak's counsel and employees of AREH, Simpson falsely stated, among other things, "Again, you were entered into a funding relationship without having the cash to support it so lets [*sic.*] understand the facts, you are illiquid and insolvent. Markets change, and your father entered this relationship with us as capital preservation / long-term, not fly by the seat of our pants because interest rates went up and you are out of money."

42. On information and belief, Simpson has also made false statements of fact regarding Oak's competency and capabilities in the business of real estate investment, with the purpose of damaging Oak's reputation in the industry both among potential business partners, lenders, and other business associates.

43. Simpson knew these statements were false at the time they were made, or else demonstrated reckless disregard for the truth or falsity.

44. Statements as to Oak's solvency and creditworthiness or ability to make payments

when due prejudice Oak in its profession, including its ability to secure financing and co-investors in projects.

45. Moreover, statements regarding the insolvency of Oak Guarantor, to which Simpson's statements also reasonably apply, would constitute a default under various lending agreements related to the Arch Portfolio.

46. Likewise, statements as to Oak's competency prejudice Oak's ability to enter into future business relationships.

47. Accordingly, Oak is substantially damaged by Simpson's defamatory statements in excess of $75,000, exclusive of interest and costs.

### COUNT III – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

48. Oak repeats and realleges the allegations contained in paragraphs 1 through 30 of this Complaint as if fully set forth herein.

49. Through its investments in properties managed by AREH, Oak has investments valued in the range of $50 million.

50. AREH is responsible for the day-to-day management responsibilities of these properties.

51. As a result of his wrongful and unauthorized conduct, both before and after his removal from JJ Arch, Simpson has engaged in conduct that has caused losses to the value of Oak's investments in the properties.

52. For example, as a result of Simpson's unilateral and unauthorized conduct in lowering the interest rate accruing to Oak from co-investors, Oak accrued less than the contractual interest rate to which it was entitled.

53. Indeed, the tortious conduct that Simpson has already undertaken and as alleged

herein has the ability to impair Oak's business interests to such a degree as to wipe out the entire equity value of all the properties the Arch Portfolio, costing Oak not only its initial investments in these properties, but the return on those investments it would have otherwise realized.

## PRAYER FOR RELIEF

**WHEREFORE**, Oak demands that judgment be entered in their favor against Simpson as follows:

(i) awarding Oak damages in an amount to be determined at trial, including punitive damages, but believed to be no less than $50 million, plus interest;

(ii) awarding Oak the costs, fees and expenses incurred in this action, including, without limitation, reasonable attorneys' fees to the extent permitted by law; and

(iii) awarding Oak such other and further relied as the Court may deem just and proper.

Dated: New York, New York
August 10, 2023

                        Respectfully submitted,

                    By: */s/ Leslie C. Thorne*
                        Leslie C. Thorne
                        leslie.thorne@haynesboone.com
                        Aishlinn Bottini
                        Aishlinn.bottini@haynesboone.com

                        HAYNES AND BOONE, LLP
                        30 Rockefeller Plaza, 26th Floor
                        New York, NY 10112
                        Telephone: (212) 659-7300
                        Facsimile: (212) 918-8989

                        **ATTORNEYS FOR 608941 NJ INC.**